Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9263 | **DATE** | 11/19/2004 |
| **CASE TITLE** | Dionna Beachem vs. Alyssa Williams, Warden, Dwight Cor | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION: federal habeas relief is not warranted. No evidentiary hearing is necessary, and the Petition for a Writ of Habeas Corpus is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
✓ Mail AO 450 form.
Copy to judge/magistrate judge.

TBK — courtroom deputy's initials

number of notices
NOV 2 2 2004
date docketed
docketing deputy initials

Document Number 16

U.S. DISTRICT COURT
2004 NOV 19 PM 1:55

Date/time received in central Clerk's Office

date mailed notice
mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dionna Beachem | ) |
| (a.k.a. Dionna Beachmon), | ) |
| | ) |
| Petitioner, | )     Case No. 03 C 9263 |
| | ) |
| v. | )     Hon. Mark Filip |
| | ) |
| Alyssa Williams, Warden, Dwight | ) |
| Correctional Center | ) |
| | ) |
| Respondent. | ) |

DOCKETED
NOV 22 2004

## MEMORANDUM OPINION DISMISSING
## PETITION FOR WRIT OF HABEAS CORPUS

Now before the Court is Petitioner Dionna Beachem's Petition for a Writ of Habeas

Corpus against Respondent Alyssa Williams, Warden of the Dwight Correctional Center,

challenging the constitutionality of the state court judgment under which Petitioner is being held.

The Court has received Respondent's answer and obtained the state court record of Petitioner's

trial and state post-conviction proceedings. For the reasons stated below, the Petition is

dismissed.

### BACKGROUND

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. The Court has

taken the facts of the matter from the record of Petitioner's trial and post-conviction petition,

appellate court opinions and orders in her criminal case and post-conviction petition, and from

her own filings in those cases.

Ms. Annie Jones, the victim in this case, was seventy-seven years old when her landlord and a worried friend discovered her dead body in her disordered apartment on December 6, 1994. *People v. Beachem (Beachem I)*, No. 1-96-3260, slip op. at 2, 6 (Ill. App. Ct. Jan. 22, 1998). Petitioner and a friend of hers, Tianna Jackson, were arrested in connection with Ms. Jones's death the next day, December 7. *Id.* at 2. The police suspected Petitioner and Jackson of the crime because they had attempted to use Ms. Jones's credit card on December 5, 1994, the day before Ms. Jones's body was discovered. *Id.*

Petitioner told the police a series of stories, the last of which was transcribed by the police, signed by Petitioner, and later admitted into evidence at Petitioner's trial. *Id.* First Petitioner claimed that she had found Ms. Jones's car with Ms. Jones's keys and purse inside. *Id.* Then Petitioner said that she and Jackson had taken Ms. Jones's car and credit card from Ms. Jones's apartment building, but Petitioner denied that she had injured or harmed Ms. Jones. *Id.* Finally, in the version which was transcribed and signed, Petitioner admitted to using violence against Ms. Jones.

Petitioner said that she had plotted with Jackson to rob Ms. Jones of her credit card. *Id.* at 2-3. Petitioner stated that she and Jackson had tried to get Ms. Jones to let them into Ms. Jones's apartment building on December 2, 1994, but Ms. Jones refused to do so because they would not identify themselves and Ms. Jones started yelling at them. *Id.* at 3. Petitioner (who was at least somewhat acquainted with Ms. Jones, *id.*) and Jackson therefore refined their plan and devised a ruse to get Ms. Jones to allow them into her building.

A few days later, on December 5, Petitioner and Jackson tried again to get Ms. Jones's credit card. *Id.* This time, according to Petitioner, "she and Jackson figured out a way to get

Ms. Jones to open the door for them." *Id.* When Ms. Jones asked who was at the door, Petitioner and Jackson stated that they were Jehovah's Witnesses, and Ms. Jones opened the door. *Id.*

Petitioner said that as soon as Ms. Jones opened the door, Petitioner grabbed the "skull cap" Ms. Jones always wore and pulled it down over Ms. Jones's eyes. *Id.* at 3-4. Jackson then pushed Petitioner through the doorway into the building, causing Petitioner to knock Ms. Jones down and fall on top of her. *Id.* at 4. Jackson locked the front door. *Id.*

Ms. Jones struggled in the hallway outside of her apartment and was making noise. *Id.* Ms. Jones also was praying and begging Petitioner and Jackson not to hurt her, saying such things as "Lord, please send somebody" and "In the name of Jesus, don't hurt me." *Id.* Ms. Jones told Petitioner and Jackson that they could have whatever they wanted. *Id.*

Petitioner tried to keep the skull cap in place over Ms. Jones eyes, but eventually Ms. Jones succeeded in removing it. *Id.* Petitioner told police that when this occurred, she "snapped" and banged Ms. Jones's head against the floor "about three times." *Id.* Petitioner said that after she repeatedly banged the elderly woman's head on the floor, Ms. Jones became quiet and stopped struggling. *Id.* Petitioner and Jackson dragged Ms. Jones into Ms. Jones's apartment and loosely bound her with a phone cord and tied her "skull cap" pulled down over her face with a phone cord that Petitioner had brought with her. *Id.*

Petitioner and Jackson left Ms. Jones on the floor while they searched for the credit card and any other valuables that might be found. *Id.* Petitioner stated that she later thought she heard Ms. Jones making sounds, so she told Jackson to check on Ms. Jones; Petitioner said that Jackson went to Ms. Jones and kicked her in the back of the head. *Id.* at 5. Petitioner said that she and Jackson found and took Ms. Jones's purse, credit card, identification, and car keys, as

3

well as some rings, and left in Ms. Jones's car, which they stole. *Id.* at 4-5.

Petitioner said that she and Jackson soon went to a jewelry store at the Ford City Mall and tried to make a $1,200 purchase. *Id.* at 5. The store owner became suspicious, called the credit card company, and asked Petitioner and Jackson for picture identification. *Id.* at 5-6. Petitioner first claimed that the credit card was hers, but she later admitted that it was not; mall security detained both Petitioner and Jackson in the store's back room. *Id.* at 6. Petitioner said in her signed statement to police that while she was in that room, she threw Ms. Jones's car keys into the trash. *Id.* Ms. Jones's body was discovered on December 6, after a friend became concerned because she did not come to church as usual. *Id.*

Petitioner was charged with first degree murder, home invasion, residential burglary, and robbery. *Id.* at 1. The prosecution corroborated at least parts of Petitioner's confession with further evidence at trial. For example, one of Ms. Jones's neighbors testified that Ms. Jones's car had been in front of the apartment building at 7:30 a.m. on December 5, but was gone at 1:00 p.m. on the same day. *Id.* at 7. A police officer testified that she found the car parked in the Ford City Mall parking lot. *Id.* A detective testified that he discovered the car's keys in one of the Mall's dumpsters the next day; the store owner testified that three days thereafter, he found Ms. Jones's driver's license hidden in his store. *Id.* A doctor who had performed an autopsy on Ms. Jones testified to numerous injuries that her examination revealed, and opined that Ms. Jones had died because head trauma had caused hemorrhaging in her scalp and brain, which had in turn caused her brain to swell. *Id.* at 7-8. The doctor also testified that when she first saw Ms. Jones, she had a knit cap pulled over her face and tied with a cord. *Id.* at 7. The doctor testified to various other injuries Ms. Jones had suffered, including broken ribs, various facial bruises and lacerations, and a bruised heart. *Id.* at 8.

4

Petitioner's trial counsel responded first by attacking the alleged correspondence between the physical evidence and Petitioner's confession. For instance, he called the first police officer to see Ms. Jones's body to the stand as a defense witness; the officer testified that he had seen marks on Ms. Jones's neck that he believed were signs of strangulation. *Id.* at 8. In closing argument, Petitioner's counsel further stressed alleged incongruities, noting the lack of evidence of a struggle in the hallway (Supplemental Exhibits (D.E. 15), Supp. Ex. 1 ("Trial Transcripts, People v. Beachem, Circuit Court of Cook County, No. 95 CR 406") at H-49), the fact that Ms. Jones's slippers were found in the room rather than the hallway (*id.* at H-50), and the fact that the injuries were more extensive than Petitioner's confession acknowledged (*id.* at H-51). The confession, he then repeatedly argued, had been coerced. (*Id.* at H-47, H-53 to H-54, H-57.) Petitioner had unknowingly used Ms. Jones's property, but was not involved in the murder. (*Id.* at H-42 to H-43.) The police had merely latched onto the first lead available and decided to ensure the conviction of the resulting suspects. *Beachem I*, No. 1-96-3260, slip op. at 8.

The defense was unsuccessful: the jury convicted Petitioner on all counts. *Id.* at 1, 8. The trial court sentenced Petitioner to concurrent prison terms of ninety, thirty, fifteen, and six years on the murder, home invasion, burglary and robbery charges, respectively. *Id.* at 1.

Normally, sentences for first degree murder in Illinois are not to exceed sixty years. 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(a) (2002). Under the law applicable at the time of Petitioner's conviction, however, a court was permitted to sentence defendants to terms of up to one hundred years if it found certain aggravating factors. 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(b) (1996), *superceded by* 2000 Ill. Legis. Serv. P.A. 91-953 (West); 730 Ill. Comp. Stat. 5/5-8-2(a)(1) (1996), *superceded by* 2000 Ill. Legis. Serv. P.A. 91-953 (West). At sentencing, the court found two such aggravating factors—including that the victim, Ms. Jones, was over sixty years old.

5

*See Beachem I*, No. 1-96-3260, slip op. at 13-15; *see also* 730 Ill. Comp. Stat. 5/5-8-2(a)(1) (1996); 730 Ill. Comp. Stat. 5/5-5-3.2(b)(2), (4)(ii) (1996). The jury had not been asked to make a determination regarding this aggravating factor in regard to the murder count. *People v. Beachem (Beachem II)*, 784 N.E.2d 285, 288, 295 (Ill. App. Ct. 2000). However, the jury was required in connection with the robbery count to find that Ms. Jones had been more than sixty years old, because "Beachem was charged with committing a robbery on a victim over 60 years of age." *Id.* at 295; *see also id.* ("Thus the jury's guilty verdict was a finding that the murdered victim of the robbery was over 60.").

Petitioner appealed her conviction to the Illinois Appellate Court, alleging both that improper comments in the prosecution's closing argument had denied her a fair trial and that the trial court had abused its discretion in sentencing her to a ninety year prison term. *Beachem I*, No. 1-96-3260, slip op. at 1-2. The appellate court rejected both arguments. It found that the comments which Petitioner alleged had drawn improper and irrelevant sympathy to the victim—that Ms. Jones had been a "deeply religious woman," a "benevolent, deeply religious woman," "a true victim," and "the type of woman that our society, at least some of us, have been taught to respect," *id.* at 8-9—were not improper. For example, the court explained that according to Petitioner's confession, she and Jackson schemed to exploit Ms. Jones's religious convictions to gain entry to her apartment by pretending to be Jehovah's Witnesses; the court found that the prosecution's comments properly pointed out this correspondence between the confession and Ms. Jones's personality without improperly dwelling on Ms. Jones's religion. *Id.* at 10-11. Similarly, the court found that the description of Ms. Jones as a "true victim" was both accurate and reasonable. *Id.* at 11.

Petitioner further alleged that the prosecution had made two arguments unsupported by

evidence in its closing argument: that Petitioners' fingerprints were not found in Ms. Jones's apartment because Petitioner had worn gloves, and that the police did not leave the State's Attorney alone in an interview with the Petitioner because Petitioner was a killer. *Id.* at 9. The appellate court found the first prosecution argument to be supported by the evidence. Because the crime had occurred in Chicago in the middle of winter and the jury had heard testimony that gloved hands do not leave fingerprints, it was reasonable to suggest that Petitioner had committed the crime but had worn gloves. *Id.* at 11. Petitioner's trial counsel never objected to the prosecution's comment about the State's Attorney interview at trial, and the appellate court considered arguments based upon it waived. *Id.* at 11-12. In the alternative, the court found that if the comment was otherwise objectionable, the defense had provoked it by claiming that the police had remained in the room with the State's attorney in order to intimidate Petitioner. *Id.* at 12.

As to the allegedly improper arguments and comments by the prosecution, the court concluded with an alternative holding. The court held that even if it had found that the allegedly offending comments were improper, such error would have been harmless because of the "overwhelmin[g]" evidence supporting the conviction. *Id.* at 12.

Finally, Petitioner alleged that had the trial court had underweighted or ignored so many factors calling for a lower sentence that it had abused its discretion by sentencing Petitioner to ninety years in prison, ignoring the likelihood that she would be rehabilitated. The appellate court noted that Petitioner had been eligible for the death penalty, and held that it was not an abuse of discretion for the trial court to conclude that although the various alleged mitigating factors suggested that Petitioner should not receive a death sentence, she should nonetheless be sentenced to ninety years. *Id.* at 13-16; *see also id.* at 15 ("The facts of this case indicate that

7

Beachem formulated a plan to rob Annie Jones months before she acted on it. . . . Beachem tailored her plan so that she could get Ms. Jones to open the door for her. Then Beachem beat a frail, elderly woman to keep her from making noise and exposing their plan to steal a credit card . . . .").

The appellate court thus affirmed the judgment of the trial court. Petitioner sought leave to appeal to the Illinois Supreme Court. Her petition presented the same bases for relief as her earlier appeal: that the prosecution had made improper comments designed to draw sympathy to Ms. Jones (Answer (D.E. 12), Ex. B (Pet. for Leave to Appeal) at 9-10) and misstated evidence in its closing argument (*id.* at 11-12), and that the trial court abused its discretion in sentencing (*id.* at 12-16). The court denied her petition without an opinion. *Beachem I*, No. 85093, slip op. at 1 (Ill. June 25, 1998).

The next year, Petitioner filed a petition for post-conviction relief in the Illinois state courts. She raised a number of new claims which purported to prove that her trial counsel had been so ineffective as to deny her the constitutional right to counsel. Petitioner's trial counsel allegedly failed to move to quash Petitioner's arrest and confession, *Beachem II*, 95-CR-00406, slip op. at 14-15 (Ill. Cir. Ct. Jan 14, 1999), forbade her to testify at trial, *id.* at 15-17, failed to inform her of a plea offer from the prosecution, *id.* at 17-18, failed to object to victim impact statements introduced at sentencing, *id.* at 18-19, failed to challenge two jurors for cause, *id.* at 20, and presented an inadequate closing argument, *id.* at 20-21. She further alleged that her trial counsel should have objected to a line of questioning the prosecution pursued with one police witness, in which the prosecution elicited testimony to the effect that the witness had heard from Petitioner's father that Petitioner had stated that she knew something about Ms. Jones's murder. *Id.* at 19. Petitioner also renewed her argument that the original trial court had abused its

discretion in sentencing. *Id.* at 9, 21.

The trial court dismissed the petition for post-conviction relief as "frivolous and patently without merit" (*id.* at 1) after reviewing the claims in a lengthy opinion. *Id.* at 1-22. The trial court did not hold an evidentiary hearing because Petitioner's claims were not supported by the requisite affidavits or supporting evidence required under Illinois law and were not clearly supported by the record. *Id.* at 8-9, 17-18, *see also* 725 Ill. Comp. Stat. 5/122-2.1(a)(2) (2002). (The trial court noted that the only arguments offered came via the petition and Beachem's own affidavit, which was insufficient under Illinois law, particularly given that "[t]he tendered documents . . . do not explain with any degree of specificity, how the petitioner's rights were violated. They further do not support any of the claims alleged in the petition." (*Beachem II*, 95-CR-00406, slip op. at 9 (Ill. Cir. Ct. Jan. 14, 1999) (collecting Illinois authorities).) The trial court also held that the abuse of discretion claim was barred by "res judicata" because of its previous litigation in the direct appeal, *id.* at 13, and that all of the ineffective assistance claims except for the one based on failure to report a plea agreement could have been raised on direct appeal and were thus waived, *id.* at 11-12.

The court offered alternative substantive grounds for the dismissal of most of the claims; the Court relays those relevant to the present petition for habeas corpus. The court found that the record indicated not that Petitioner's counsel had refused to permit her to testify "as to how she became involved in the situation," *id.* at 9, but rather that counsel had merely advised her not to testify, *id.* at 17. The trial court admonished Petitioner of her right to testify, and Petitioner acknowledged that she understood and did not wish to do so. *Id.* With respect to Petitioner's claim that her trial counsel had failed to relay a plea agreement from the prosecution to her, the court discussed the lack of any affidavit or other evidence other than Petitioner's conclusory

9

allegation, and held as a matter of state law that "[u]nsupported conclusory allegations in the petition or in the petitioner's own affidavit are not sufficient to require a hearing under the [Illinois Post-Conviction Hearing] Act." *Id.* at 17-18 (collecting Illinois cases). The court dismissed Petitioner's claim as insufficiently developed and as meritless in any event. *Id.*

Petitioner appealed, narrowing her claims for relief to her trial counsel's alleged failure to relay a plea offer (D.E. 12, Ex. E (Brief and Argument for Petitioner-Appellant) at 12-15) and her trial counsel's failure to object to the prosecution's line of questioning that produced hearsay evidence regarding a discussion between Petitioner and her father (*id.* at 17-19). Petitioner also added the claim that the prosecution had deprived her of a fair trial by eliciting testimony from a witness to the effect that Jackson had confessed to the crime. (*Id.* at 20-22.) Petitioner also alleged, either as an independent ground for relief or as an excuse for failing to raise the issue sooner, that her appellate counsel had been ineffective in failing to raise this last argument. Finally, in a supplemental brief, the Petitioner alleged that her sentence violated the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Petitioner argued that unless the jury had been instructed in regard to the murder charges to determine whether any of the statutory aggravating factors applied, Petitioner could not have been sentenced to more than sixty years in prison, the normal statutory limit of 730 Ill. Comp. Stat. 5/5-8-1(a). (D.E. 12, Ex. F (Supp. Brief and Argument for Defendant-Appellant) at iv-v.)

The appellate court initially found against the Petitioner on everything but her *Apprendi* claim. The court affirmed the trial court's dismissal of Petitioner's plea agreement claim, finding it "frivolous" and "patently without merit" because there was no record support as

required by Illinois law. *See Beachem II*, 740 N.E.2d 389, 391 (Ill. App. 2000) ("It was pure

unsupported conclusion."). Although Petitioner claimed that she had in fact attached an affidavit

from her mother to her petition, of which the trial court allegedly had failed to take note (D.E.

12, Ex. E at 14-15), the court disagreed: the affidavit was addressed "To the Appellate Court"

and was dated almost a month after the trial court dismissed the petition. *Beachem II*, 740

N.E.2d at 391. The appellate court could not consider it because it had not been properly

presented to the trial court. *Id.* The court also found that the prosecutorial misconduct issues had

not been properly raised below and were waived. *Id.*

By contrast, the court initially found Petitioner's *Apprendi* argument at least potentially

persuasive. (It reversed itself shortly thereafter on remand after consulting intervening

precedent.) The court held that *Apprendi* applied retroactively to judgments finalized before that

decision, and that it presented potential implications for Petitioner's case. *Id.* at 397. However,

the court was reluctant to make any determinations before the issue was developed more fully

below, and the court remanded the petition to the trial court for reconsideration in light of

*Apprendi. Id.* at 399.

The State of Illinois petitioned the Illinois Supreme Court for summary review and

remand to the appellate court for reconsideration in light of three cases from the Illinois Supreme

Court. (D.E. 12, Ex. H (Motion for Summary Remand in Light of People v. Ford (Ill. 2001),

People v. Hopkins (Ill. 2002), and People v. Rogers (Ill. 2001).) The Illinois Supreme Court

remanded the case to the appellate court for reconsideration without an opinion. *Beachem II*,

779 N.E.2d 1147, 1148 (Ill. 2002).

On remand, the appellate court changed its mind on the merits of Petitioner's *Apprendi*

claim and affirmed the trial court's dismissal of her post-conviction petition. Although it still

11

held that the rule established in that case applied retroactively to the Petitioner's, it found that

the trial court's ninety year sentence was consonant with that rule. *Beachem II*, 784 N.E.2d 285,

295 (Ill. App. Ct. 2002). First, the court found that the "statutory maximum" penalty for first

degree murder was death, rather than sixty years in prison, and that the ninety year prison term

was more lenient than a death sentence, so that there was no need for either of the aggravating

factors upon which the trial court relied to have been found by a jury. *Id.* Second, the court

found that *Apprendi*'s jury-finding requirement had been met when the jury had explicitly found

that Ms. Jones had been over sixty years old in relation to the burglary count, so that even if the

ninety year sentence had exceeded the purported "statutory maximum" it would nonetheless

have been constitutional. *Id.*

The Petitioner sought leave to appeal to the Illinois Supreme Court. The petition for

leave to appeal explicitly raised the claims that Petitioner's original trial counsel had been

constitutionally ineffective in refusing to allow Petitioner to testify and failing to relay a plea

offer (D.E. 12, Ex. K (Pet. for Leave to Appeal) at 2), and that Petitioner was denied "due

process" when "sentenced to an extended term" (*id.*). Within this last claim Petitioner included

and did not clearly distinguish between arguments that the trial court abused its discretion in

sentencing, that the judicial finding of aggravating factors violated *Apprendi*, and that the

evidence at trial was insufficient to permit a jury to conclude beyond a reasonable doubt that she

had committed the crime. (*See id.* at 7-9.) The Court dismissed her petition without opinion.

*Beachem II*, No. 95699, slip op. at 1 (Ill. Apr. 2, 2003).

DISCUSSION

I.      Standard of Review

The grounds upon which the Court may issue a writ of habeas corpus for a person

imprisoned pursuant to a state court criminal judgment are subject to meaningful limits. First and most basically, habeas relief can be granted "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2000). The Court may not review claims that a state court incorrectly applied state law, except to the extent that such application also violated federal law.

The Court may not provide habeas relief unless Petitioner has exhausted her available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A) (2000). This means that she must not be currently capable of raising claims she presents to the Court in a proceeding that is part of a full round of Illinois's established appellate-review system for a determination on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Federal courts have determined that for the purpose of habeas corpus, Illinois's appellate-review system includes presentation of claims to the Illinois Supreme Court for discretionary review, *id.* at 845-848; *accord Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003), and the rule applies to petitions for post-conviction relief as well as direct appeals from criminal courts, *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

Petitioner must furthermore have avoided "procedurally defaulting" her claims in the Illinois courts. There are at least two ways in which such a procedural default can arise. First, if a state court decision resolving a claim rests upon an independent state-law ground that is adequate to support the judgment, even if it is a procedural rather than substantive ground, such claims are defaulted and may not be reviewed by federal courts. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *accord Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). This is a corollary to the more general rule that federal habeas relief is only available for violations of federal law—if a judgment is consistent with constitutionally permissible state law, there is no such violation. *See Coleman*, 501 U.S. at 729 (noting that the default rule applies "whether the

state law ground is substantive or procedural"). Where multiple state court rulings support a judgment, the grounds supporting the judgment are those of the last court to "articulate a reason" for the judgment. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). If a state court decision appears to be at least interwoven with federal law, and the adequacy and independence of any state-law grounds are unclear on the face of the opinion, it is presumed that the decision rests upon federal law. *Coleman*, 501 U.S. at 733.

Second, if Petitioner did not pursue a full round of review in Illinois's appellate system, so that the state court to which she would have been permitted to present her claims would now reject them on independent and adequate state-law procedural grounds, those claims are procedurally defaulted and may not be heard in federal court. *See Conner*, 375 F.3d at 648; *accord O'Sullivan*, 526 U.S. at 848. In essence, this means a claim may not be reviewed if an attempt to present the claim to state courts for the first time would produce a judgment that would create a procedural default under the independent and adequate state-law ground doctrine. *See Coleman*, 501 U.S. at 735 n.1 (stating that claims are defaulted if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Either kind of procedural default may be excused in limited circumstances. One such circumstance is where a "fundamental miscarriage of justice" has occurred—that is, where a petitioner can show by clear and convincing evidence that but for the alleged violation of federal law in the state court proceedings, no reasonable juror would have convicted her. *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The presumption of innocence does not apply in such a situation because of the prior finding of guilt by a jury, so a petitioner alleging a fundamental miscarriage of justice has the burden of

14

proving her innocence. *See, e.g., Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) ("A defendant who asserts actual innocence as a reason to excuse procedural default must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict.") (emphasis in original).

Procedural default is also excused where there is "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. The "cause for the default" must be an excuse: "something *external* to the petitioner, something that cannot fairly be attributed to" her. *Id.* at 753 (emphasis in original). For example, conduct by a petitioner's counsel that is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), constitutes cause. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). However, a claim that certain circumstances constitute cause for procedural default can *itself* be procedurally defaulted if it is not properly presented to state courts. *Carpenter*, 529 U.S. at 452-53.

Finally, additional restrictions on federal habeas relief for state prisoners were created by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996). First, the challenged imprisonment must not only violate federal law, but the state court judgment pursuant to which the petitioner is imprisoned must further be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or be "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2000). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546,

548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A decision need not cite or even be aware of relevant Supreme Court precedents in order to be consistent with them. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court's application of law to facts is not necessarily unreasonable merely because a federal court disagrees with it. *Huynh v. Bowen*, 374 F.3d at 548. Rather, the application must be objectively unreasonable. *See, e.g., Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). A petitioner has the burden of showing that an application was unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Second, the AEDPA made clear that the procedural default rules extend to attempts to introduce new evidence in federal proceedings. If a petitioner through her own fault failed to develop the factual basis of a claim for habeas relief in state court, *see United States v. Williams*, 529 U.S. 420, 431-34 (2000), a federal court cannot hold an evidentiary hearing unless the claim relies upon a new retroactive constitutional rule or upon facts that could not have been previously discovered through a duly diligent investigation, or if the facts underlying the claim would establish a fundamental miscarriage of justice, 28 U.S.C. § 2254(e)(2) (2000); *see also United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 240 (7th Cir. 2003).

II.     Issues Raised in the Petition

Petitioner alleges that a great number of infirmities in her trial entitle her to federal habeas relief. As explained further below, none warrants relief.

A.     The *Apprendi* Claim

Petitioner alleges that her "rights to due process [were] denied by being sentenced to an extended term." (Pet. for Writ of Habeas Corpus (D.E. 1) at 5.) Respondent reads this portion of the Petition, together with the next sentence ("The trial court abused its discretion when it failed to consider mitigating factors in sentencing." (*Id.* at 5)), to allege only that the trial court

16

abused its discretion in sentencing. This is not the fairest reading of Petitioner's argument—the two distinct sentences suggest two distinct claims, and the claim that the extended term sentence violated the Due Process Clause of the Fourteenth Amendment calls to mind the purported violation of the *Apprendi* rule alleged in Petitioner's state court post-conviction proceedings. In this regard, in the post-conviction proceedings, Petitioner filed a Petition for Leave to Appeal to the Illinois Supreme Court, in which the heading "[d]efendant was denied her right to due process by being sentenced to an extended term" (D.E. 12, Ex. K at 2) was used in part to introduce her *Apprendi* claim (*see generally id.* at 7-9 (using the word "Apprendi" several times)).

The Court must thus examine the *Apprendi* claim, first determining whether its history is such that the Court should address its substance (*i.e.*, whether or not it is procedurally barred, properly exhausted, etc.), and then if necessary doing so. In this instance, there are no reasons for the Court to stop short of the substantive issue itself. As *Apprendi* is a federal constitutional holding, the violation of its rule would present a violation of the Constitution upon which this Court may grant relief. *See Apprendi*, 530 U.S. at 490. The claim was raised soon after the issuance of the *Apprendi* opinion in the appellate court, which did not hold it procedurally barred. *Beachem II*, 740 N.E.2d at 391, 397 ("[W]e turn to the merits of [Petitioner's] claim . . . ."). After the appellate court decided against her on remand, *Beachem II*, 784 N.E.2d at 295, Petitioner raised the claim in her Petition for Leave to Appeal to the Illinois Supreme Court, properly exhausting her remedies (D.E. 12, Ex. K at 7-9). The last opinion to give a reason for the judgment was the second appellate court opinion, which addressed the issue on the merits and concluded that *Apprendi* had not been violated. *Beachem II*, 784, N.E.2d at 295. This Court, in turn, should resolve the issue on the merits and ask whether *Apprendi* requires the

issuance of a writ of habeas corpus.

Examining the existing law, the Court concludes that it does not, for multiple reasons. First, the Illinois Appellate Court's ruling that the *Apprendi* analysis applies retroactively to judgments that became final before its issuance has not been accepted by the United States Supreme Court or the Seventh Circuit. *See Schiro v. Summerlin*, 124 S.Ct. 2519, 2526 (U.S. 2004); *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) ("*Apprendi* therefore does not disturb sentences that became final before June 26, 2000," the date of its release). A judgment becomes final for purposes of retroactivity analysis when further direct appeals of the judgment are no longer available, *Teague v. Lane*, 489 U.S. 288, 295 (1989), even if a case is collaterally reviewed. The judgment against the petitioner became final when the Illinois Supreme Court denied direct review in 1998, two years before *Apprendi* was decided. Thus, even if the Illinois Appellate Court misread *Apprendi*, it would not render Petitioner's imprisonment contrary to the Constitution.

Second, Petitioner's case is distinguishable from *Apprendi*, and the Court does not believe that the appellate court's judgment was contrary to or an unreasonable application of the *Apprendi* rule requiring jury determination of facts that increase sentences. One reason the appellate court gave for affirming the dismissal of the post-conviction petition was that although the jury had not, in its instructions specifically regarding the murder count, been asked to make a determination regarding the statutory aggravating factors, the jury instructions regarding the robbery count did ask the jury to determine whether Ms. Jones had been over sixty years old (*see* D.E. 15, Supp. Ex. 1 at H-82 to H-83 ("That the person from whom the defendant took property was 60 years of age or older.")), and the jury did in fact determine that she was.

Thus, even if *Apprendi* required a jury finding that the victim was over sixty years of age

with respect to the murder count, it is clear that any error relating to this particularized requirement would be harmless on the facts of this case. It is "only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding," *United States v. Dominiguez-Benitez*, 124 S.Ct. 2333, 2339 (U.S. 2004), and failure to include a particular element of an offense in the jury instructions is not one of those structural errors, *Neder v. United States*, 527 U.S. 1, 8-9 (1999). Where, as here, the burden is on a petitioner to show error, the petitioner must show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *Dominiguez-Benitez*, 124 S.Ct at 2339 & n.7 (internal citation and quotation omitted; brackets in *Dominiguez-Benitez*); *see also Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003) (collecting cases and holding that the standard on collateral review is whether error had a "substantial and injurious effect or influence in determining the jury's verdict").

The Court can think of no reason, and none has been suggested, why the jury would have refused to find that Ms. Jones was over sixty years old in regard to the murder count when it found that Ms. Jones was over sixty years old in regard to the robbery count. The Supreme Court recently decided a similar case, *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003), in which it held that an Ohio court's finding of harmless error was not unreasonable for purposes of the AEDPA; there the trial court had failed to include jury instructions calling for a determination of whether the defendant was the "principal" in a crime, but the defendant alone was charged and alleged to have taken place in the crime. Just as it is logically necessary that the sole perpetrator of a crime is its principal, so in Petitioner's case, as the robbery and murder of Ms. Jones were never argued to have occurred at different times and were, indeed, part of the same event, it was

logically necessary for Ms. Jones to have been the same age during the robbery and the murder. Thus, even assuming that *Apprendi* applied retroactively to Petitioner's case and that the failure to issue jury instructions on Ms. Jones's age specifically in connection with the murder count was error, there is no reasonable argument by which the purported error would have had any effect on the verdict. *Accord, e.g., United States v. Farmer,* 924 F.2d 647, 650 (7th Cir. 1991) (collecting cases and holding that, even if four RICO predicates found by jury were barred by principles of double jeopardy, the error was harmless because remaining predicates found by jury were "surely enough to . . . [constitute] a RICO pattern."). Petitioner's *Apprendi* claim does not ground habeas relief.

B.     Abuse of Discretion in Sentencing

Next, Petitioner alleges that "[t]he trial court abused its discretion when it failed to consider mitigating factors in sentencing." (D.E. 1 at 5.) Respondent correctly notes that abuse of discretion granted to a state court by state law does not implicate the federal Constitution. *Dellinger,* 301 F.3d at 764 ("[A]n error in . . . the application of state sentencing rules, does not present a cognizable claim for federal habeas relief.") The use of the term "*abuse* of discretion" marks this claim as alleging improper use of discretion granted to the trial court by Illinois law, rather than an attack on the constitutionality of the grant of discretion itself. State court opinions have all reasonably read Petitioner's arguments on this point as implicating only state law. *Beachem I,* No. 95-CR-406, slip op. at 12 ("[Petitioner] does not dispute her eligibility for an extended term sentence, but claims the circumstances militate against it.") (citation omitted), *Beachem II,* No. 95-CR-00406, slip op. at 21 ("does not create a constitutional issue"). Petitioner's filings addressing her sentence have only once, in her initial post-conviction petition, cited the Eighth and Fourteenth Amendments; the citations were not used before or on appeal.

(D.E. 15, Supp. Ex. 4 ("Common Law Record, <u>People v. Beachem</u>, Circuit Court of Cook County, No. 95 CR 40601") at C42.)  The filings stress the mitigating circumstances and rehabilitative potential of Petitioner rather than any outrageous excess in the sentence.  (*See, e.g.*, *id.* (stressing lack of evidence, criminal background, and age).)  This is not a situation where a state court was probably, or even somehow, alerted to possible federal claims as a practical matter.  *See Bocian v. Godinez*, 101 F.3d 465, 470 (7th Cir. 1996).  Any reading of the Petition to offer more than state-law claims regarding Petitioner's sentence would be strained and inappropriate.

Even if the Court somehow had the power to review the sentence for abuse of discretion under federal or state sentencing law (and the court does not believe it has any such power in this case), the Court would find the state appellate court's decision to uphold the sentence reasonable.  Under federal law, when a defendant is not sentenced under the United States Sentencing Guidelines, courts may not vacate a sentence for abuse of discretion, even if disparate sentences were imposed on co-defendants, as long as the sentencing court gave "thoughtful consideration" to the sentence imposed.  *United States v. Hall*, 212 F.3d 1016, 1019-20 (7th Cir. 2000).  If a sentencing court was aware of mitigating factors and considered them in good faith, the degree of weight it placed upon each factor will rarely be questioned or disturbed.  *United States v. Vasquez*, 966 F.2d 254, 258 (7th Cir. 1992).

The standard of review under Illinois law is not seriously different.  If the sentence imposed is within the statutory range, it "will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense."  *People v. Tisley*, 793 N.E.2d 181, 187 (Ill. App. Ct. 2003) (citing *People v. Fern*, 723 N.E.2d 207, 210 (Ill. 1999)).  Mitigating factors are not entitled to greater weight than the

21

seriousness of an offense. *People v. Shaw*, 815 N.E.2d 469, 474 (Ill. App. Ct. 2004).

Comparisons to other sentences imposed for the same kind of crime play no role in the analysis.

*Fern*, 723 N.E.2d at 210 ("We agree with those decisions rejecting cross-case comparative

sentencing as a basis for challenging a sentence. We find that such an analysis does not comport

with our sentencing scheme's goal of individualized sentencing and would unduly interfere with

the sentencing discretion vested in our trial courts.").

Here, the trial court did consider the relevant mitigating and aggravating factors: the

particular facts of the crime, Petitioner's lack of criminal history, her psychiatric and family

history, and her age, as well as the need for a punishment that would deter possible future

criminals. *Beachem I*, No. 1-96-3260, slip op. at 12-13; (D.E. 15, Supp. Ex. 1 at J-192 to J-

195). The state appellate court agreed with its assessment. *Id.* at 15-16. More particularly, the

trial court considered the relative culpability of Petitioner and her codefendant. Petitioner

claimed at sentencing that she had "f[allen] in with the wrong crowd." *Id.* at 13. The judge did

not agree, and found "that [Petitioner] was the instigator." *Id.*; (D.E. 15, Supp. Ex. 1 at J-193).

Seeing as the court found that Petitioner rather than Jackson had instigated the crime, it was

entirely reasonable for it to sentence Petitioner more harshly than Jackson. The sentence was

both thoughtfully considered and sufficiently proportionate to the offense; it was reasonable for

the state appellate court to conclude that the trial court did not abuse its discretion.

As previously noted, the Court does not believe that Petitioner's current claims regarding

her sentencing or any of her previous such claims in state courts were federal in nature.

However, because in some cases courts have found that petitioners' murky sentencing claims

also raised claims that sentences violated the Cruel and Unusual Punishment Clause of the

Eighth Amendment, *see, e.g., Bocian*, 101 F.3d at 470, the Court notes in an abundance of

22

caution that a ninety year sentence cannot be seriously thought constitutionally disproportionate to the crime of murder in general, let alone the particular murder of which Petitioner was convicted. *See Holman v. Page,* 95 F.3d 481, 486 (7th Cir. 1996) ("[Defendant's] sentence of natural life imprisonment for murder is eminently rational."), *overruled on other grounds by Owens v. United States,* 2004 WL 2339765 (7th Cir. Oct 19, 2004); *Harmelin v. Michigan,* 501 U.S. 957, 1004 (1991) (citing *Solem v. Helm,* 463 U.S. 277, 290 n.15 (1983)) ("[N]o sentence of imprisonment would be disproportionate" to "the crime of felony murder without specific intent to kill . . . .").

C.      Incapacity to Stand Trial Due to Mental Illness

Petitioner alleges that the trial court failed to consider a bona fide doubt as to her fitness to stand trial raised by her mental illness. (D.E. 1 at 5.) Respondent correctly notes that Petitioner did not make this claim in state court either on direct appeal or in her post-conviction petition. Illinois courts would now consider the issue waived in any second petition for post-conviction relief. 725 Ill. Comp. Stat. 5/122-1(f) (2002) ("Only one petition may be filed by a petitioner under this Article without leave of court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings . . . ."). Therefore, Petitioner has failed to properly exhaust her state court remedies and is procedurally barred from raising the issue here.

Petitioner offers no excuse for this procedural default, and no excuse suggests itself to the Court. Furthermore, any obvious excuses, such as ineffective assistance of counsel, were not raised in state court either, and are thus procedurally defaulted as well. Nor does the Petitioner have the benefit of a "fundamental miscarriage of justice" claim. She has not provided any substantial evidence (indeed, has presented no meaningful evidence at all) that she is actually

23

innocent of the crime. *Accord Buie*, 341 F.3d at 626 ("[I]t is hard to see how one who has confessed can assert actual innocence" when the confession is uncontested in the petition.).

The Court therefore holds that the Petitioner's claim is procedurally defaulted. Even if it were not, however, the claim would not support habeas corpus relief. The Due Process Clause only requires a court to hold a hearing on a criminal defendant's fitness to stand trial if the court has "substantial reason to doubt the defendant's fitness." *Eddmonds v. Peters*, 93 F.3d 1307, 1316, (7th Cir. 1996) (quoting *Phillips v. Lane*, 787 F.2d 208, 216 (7th Cir. 1986)). A person is mentally fit to stand trial under the Due Process Clause if that person has "sufficient present ability to consult with his lawyer within a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)); *accord Brooks v. McCaughtry*, 380 F.3d 1009, 1012 (7th Cir 2004). Whether the defendant has the capacity to assist in her own defense is the primary concern. *Eddmonds*, 93 F.3d at 1315.

Although the record in this case includes testimony regarding Petitioner's history of mental illness (*see, e.g.,* D.E. 15, Supp. Ex. 1 at J-98 (Petitioner was receiving SSI payments for depression in December 1994); *id.* at C122 (Petitioner received inpatient psychiatric treatment for manic depression in 1992)), Petitioner does not explain and the Court does not see how this evidence suggests that Petitioner was unable to understand the charges against her and assist in her defense at trial. Indeed, this position was explicitly disavowed when the evidence was introduced at Petitioner's sentencing hearing. When the court noted that a report prior to trial had indicated that Petitioner was "fit and sane," Petitioner's trial counsel responded that "there is no issue here contesting any prior finding of fitness or sanity . . . . it is a factor in mitigation." (*Id.* at I-4.)

24

Furthermore, Petitioner's behavior at trial suggested that she was competent. When competence to stand trial is examined after the fact, a defendant's behavior at trial can be probative evidence. *Eddmonds,* 93 F.3d at 1315. For instance, the court in *Eddmonds* concluded that a defendant had been fit to stand trial because he gave "coherent and very detailed" testimony at a hearing on a motion to suppress evidence, which "disclose[d] a reasonably intelligent man actively defending his interests." 93 F.3d at 1318. By contrast, in *Benefiel v. Davis,* 357 F.3d 655 (7th Cir. 2004), a defendant's refusal to answer his attorney's questions and to retake the stand after a recess raised serious questions about his competence. *Id.* at 659.

In this case, though Petitioner's behavior revealed some clear disagreement of strategy with her attorney, her conduct nonetheless showed a rational understanding of the proceeding. She used her right of allocution at sentencing to express remorse for the victim's death, stress her rehabilitative potential, and throw blame on her codefendant. (D.E. 15, Supp. Ex. 1 at J-189 to J-191 ("If I could have one wish, I would bring Miss Jones back because it would make a lot of people happy. . . . . I only wish that I could have another chance to prove myself and become a productive individual in my community, to continue my education . . . . I am very sorry for associating with the wrong crowd.").) Though this speech was read against the advice of her attorney (*id.* at J-188), who probably had the better view—Petitioner's hairsplitting apologies and insinuations of innocence might have struck the sentencing court as inconsistent with true remorse, making the rest of her speech sound somewhat canned (*see, e.g., id.* at J-189 ("I'm very sorry for associating with the wrong crowd. I want this to be known."))—it nonetheless revealed someone who understood the nature of the criminal proceeding and sought to protect her interests.

Petitioner has not attempted to introduce new evidence on the subject—indeed, under the

AEDPA, she could not introduce new evidence in this proceeding without cause. It was reasonable for the trial court not to doubt Petitioner's fitness. Even if the Petitioner's claim were not procedurally defaulted, the Court would deny habeas relief.

D.     Improper Comments by Prosecutors

Petitioner claims that she was denied a fair trial "when my attorney and the trial court allowed improper comments made by prosecutors during closing and rebuttal arguments." (D.E. 1 at 5.) Presumably, Petitioner means the comments regarding Ms. Jones's religious convictions, the suggestion that Petitioner had worn gloves at the crime scene, and the comment regarding the police's refusal to leave the State's Attorney alone with the Petitioner, which she has discussed before in her state court appeals. As before, Respondent sees only one claim when fairness dictates that the Court consider two. The first claim is that Petitioner's trial counsel was constitutionally ineffective in failing to prevent the prosecution from making the allegedly improper comments. Respondent correctly notes that this claim was not made with Petitioner's other ineffective assistance of counsel claims in her state post-conviction petition, and that the claim is thus improperly exhausted and barred from consideration by this Court. Again, no reason is given to excuse the procedural default, and none suggests itself.

However, although a claim based on trial counsel's failure to prevent alleged prosecutorial misconduct is barred, a claim that the alleged misconduct directly violated Petitioner's constitutional rights is not. The Petition, read with the charity due a *pro se* filing, *Winsett v. Washington*, 130 F.3d 269, 280 (7th Cir. 1997), can be read to make this claim. Petitioner does not focus specially on her trial counsel, but rather implicates every party in the courtroom: her rights were allegedly violated when her "attorney and the trial court" allowed improper comments "made by prosecutors." (D.E. 1 at 5.) The sentence makes clear that the

26

prosecution was the moving force behind the constitutionally suspect conduct, while the trial court and defense counsel were only guilty of allowing the conduct to happen. Given that a claim relating to the defense counsel or the trial court would be new and barred, and that Petitioner has repeatedly made a claim dealing directly with the prosecution in her state court appeals, the Court concludes that her Petition can reasonably be read as advancing a claim that the prosecutor's comments directly violated her constitutional rights.

Part of this direct claim is suitable for review by this Court. A prosecutor's improper comments can potentially "make the resulting conviction a denial of due process," so the claim alleges that Petitioner's imprisonment violates the Constitution. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Petitioner raised her claims on direct appeal, *Beachem I*, No. 1-96-3260, slip op. at 8-9, and preserved them in her Petition for Leave to Appeal to the Illinois Supreme Court (D.E. 12, Ex. B at 9-12). She may not now further pursue the claim in state court, and could not have even in her post-conviction petition, *see People v. Williams*, 807 N.E.2d 448, 452 (Ill. 2004) (holding that post-conviction petitions may address "only . . . constitutional issues that were not, and could not have been, adjudicated on direct appeal), so the claim is properly exhausted. The appellate court, the last court to address the claim, held that Petitioner had waived her claim regarding the comment about the meeting with the State's Attorney by failing to object to it at trial, so that part of the claim is barred by a judgment resting on an independent and adequate state-law ground. However, the court addressed the substance of the comments regarding Ms. Jones's religious convictions and the possibility that Petitioner had worn gloves at the crime scene and concluded that they were not improper, so these parts of Petitioner's claim are not procedurally defaulted.

The Court must evaluate the reasonableness of the appellate court's judgment in two

steps. First, it must inquire whether the statements were improper; if they were, the Court must inquire whether the comments were so prejudicial as to deprive Petitioner of a fair trial. Statements made in the closing arguments of the guilt phase of a trial should be relevant to the guilt or innocence of the accused; statements which are not relevant are improper. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997) (holding that comments concerning a prosecution witness's feelings upon being called a liar "were improper . . . because [they] . . . invited the jury to consider issues beyond the guilt and innocence of the defendant); *see also United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir. 1987) (holding that the prosecution's revelation to the jury that a key police officer had been absent from the trial due to the death of the officer's father was "improper because it was irrelevant, and may have drawn the jury's sympathy"). Such irrelevant comments sometimes appeal to the jury's emotions. *See, e.g., United States v. Kelley*, 991 F.2d 1308, 1315 (7th Cir. 1993) (holding that prosecutor's sarcastic cry, "God help us if a police officer might ask some questions and find out if people like [the defendant] are carrying loaded guns," improperly "appealed to the emotions of the jury"). In arguing the facts, prosecutors may suggest reasonable inferences from the evidence, but may not suggest totally unsupported theories. *United States v. Ward*, 211 F.3d 356, 365 (7th Cir. 2000).

It was both relevant and proper for prosecutors to suggest that Petitioner had worn gloves. "The prosecutor did not state unequivocally that [Petitioner] wore gloves . . . . [T]he prosecutor, in response to the defense counsel's comment that [Petitioner's] fingerprints were not found inside Ms. Jones's apartment, recalled the evidence technician's testimony that fingerprints may not be left under certain conditions or if the person is wearing gloves." *Beachem I*, No. 1-96-3260, slip op. at 11. As the Illinois appellate court stated, a jury could reasonably draw the conclusion that Petitioner wore gloves at the crime scene from three pieces

of evidence: Petitioner's confession, the lack of Petitioner's fingerprints at the crime scene, and

expert testimony regarding conditions under which fingerprints would not be left. It is eminently

reasonable for a jury to reconcile purportedly conflicting testimony by deciding upon a theory

that is most consistent with all the available evidence. *See, e.g., Makhija v. Deleuw, Cather and

Co.*, 666 F. Supp. 1158, 1161 (N.D.Ill. 1987). It is not troublesome that one of the purportedly

conflicting pieces in this case is Petitioner's confession. Although some independent evidence is

necessary to establish a confession's trustworthiness, the prosecution need not provide

independent corroborating evidence of each element of the offense charged. *United States v.

Jackson*, 103 F.3d 561, 567 (7th Cir. 1997). It was appropriate for the prosecution to argue that

since the Petitioner had confessed that she had been in the room, and police found none of her

fingerprints there, one of the circumstances in which fingerprints will not be left must have

occurred. Given the date and location of the crime—*i.e.*, December in Chicago—it was entirely

reasonable to suggest that the Petitioner had worn gloves during the murder of Ms. Jones.

The prosecution's comments about Ms. Jones's religious convictions and personality

were tame compared to much that occurs in criminal trials. As mentioned before, a prosecutor

described Ms. Jones as a "deeply religious woman," and a "benevolent, deeply religious

woman." *Beachem I*, No. 1-96-3260, slip op. at 8-9. The prosecutor also said that Ms. Jones

was "a true victim." (D.E. 12, Ex. B at 9 (citing D.E. 15, Supp. Ex. 1 at H-40).) As the Illinois

appellate court held, the statements were not improper because the prosecutor "merely pointed

out that [Petitioner] took advantage of Jones' religious nature . . . ." *Beachem I*, No. 1-96-3260,

slip op. at 10-11. Evidence before the jury made clear that Petitioner and her co-defendant had

schemed to exploit their victim's religious convictions and interests to gain entry to her home.

Even if one assumes *arguendo* that any or all of the comments were improper, they also

were clearly harmless. To make this determination, the Court must examine the comment in light of the record as a whole to determine its effect. *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001). A six-factor test governs the inquiry. A comment is more likely to have rendered a trial unfair if it involved a misstatement of the evidence or implicated specific rights of the accused, such as the right against self-incrimination. *United States v. Love*, 336 F.3d 643, 647-48 (7th Cir. 2003). It is less likely to have done so if the defense invited the response, if the trial court instructed the jury to ignore the comment, if the defendant had an opportunity to rebut and reduce the comment's effect, and if the weight of the evidence against the Petitioner was such that the jury would probably have convicted even in the absence of the comment. *Id.* The last factor is the most important. *Id.*

Applying this test to Petitioner's case, the Court finds reasonable the Illinois Appellate Court's conclusion that the allegedly offending comments were "not a material factor in the determination of defendant's guilt" because the "evidence overwhelmingly supports the conviction." *Beachem I*, No. 1-96-3260, slip op. at 12. Although there is no physical evidence specifically connecting the Petitioner with the crime scene, the jury was presented with Petitioner's signed confession to the crime, as well as clearcut physical evidence connecting her with the spoils of the confessed robbery. On the facts of this case, it is not reasonable to think that the prosecutor's opinion as to whether Ms. Jones was worthy of respect or was a religious woman would have motivated a jury that otherwise harbored reasonable doubt about Petitioner's guilt or innocence to return a guilty verdict. This is especially true given that the jury had already heard details about the grisly and senseless crime—in which Petitioner with her own hands helped to bind, beat, and kill an elderly woman who was begging for mercy, so that Petitioner and her co-defendant could steal a credit card to try to buy some jewelry—from

30

Petitioner's confession and other testimony that were far more likely to inflame the jury's emotions than the prosecution's allegedly offending comments.

The less important factors of the test are here insufficient to dislodge this conclusion. The prosecutor did not misstate the evidence or implicate Petitioner's specific rights. The court instructed the jury that "[n]either sympathy nor prejudice should influence you." (D.E. 15, Supp. Ex. 1 at H-75.) Under these circumstances, and after having reviewed the trial record, which was obtained, this Court agrees with the conclusions of the Illinois appellate court that the allegedly offending comments did not violate Petitioner's constitutional rights, and any error would be harmless in any event. This Court may not grant habeas relief on this ground.

E.      Trial Counsel's Failure to Inform Petitioner of a Plea Offer

Petitioner alleges that her trial counsel failed to inform her that the prosecution offered a reduced sentence in return for a guilty plea. (D.E. 1 at 5.) She alleges that she later learned about this plea offer from her mother or her aunt, both of whom allegedly had a conversation with Petitioner's trial counsel shortly after Petitioner's sentencing in which the trial counsel said that he held back the information because he "couldn't talk" to Petitioner. *See Beachem II*, 784 N.E.2d at 287; (D.E. 15, Supp. Ex. 4 at C87.)

Each of the Illinois Courts to address this issue, the trial court on post-conviction review, and the Court of Appeals (twice—both before and after the remand) found the claim to be "frivolous" and "patently without merit." *People v. Beachem*, 784 N.E.2d 285, 288 (Ill. App. Ct. 2002); *People v. Beachem*, 740 N.E.2d 389, 391 (Ill. App. Ct. 2000); *Beachem II*, 95-CR-00406, slip. op. at 1 (Ill. Cir. Ct. Jan. 14, 1999). The last court to consider this issue—the Illinois Court of Appeals—rejected it on both procedural and substantive grounds. The procedural ground relates to a rule of Illinois law concerning the presentation of claims in the post-conviction

31

review setting—namely, that a claim must be presented with evidentiary support that is either clear in the record or through non-conclusory affidavits from others besides the defendant alone. *See, e.g., People v. Maury*, 678 N.E.2d 30, 32 (Ill. App. Ct. 1997) ("Unsupported conclusory allegations in the petition or in the petitioner's affidavit are not sufficient to require a hearing."); *Beachem II*, 95-CR-00406, slip. op. at 18 (Ill. Cir. Ct. Jan. 14, 1999) (collecting Illinois cases). The trial court relied upon this deficiency to hold that no hearing was necessary and that Petitioner's claim failed as a matter of state law. *Id.* The Illinois courts also rejected the claim on substantive grounds. In discussing the claim, the Illinois Court of Appeals found that the claim was based on "pure unsupported conclusion" and explained that Petitioner had improperly attempted to rely on evidence on appeal that was not properly presented to the trial court. *People v. Beachem*, 784 N.E.2d 285, 287-88 (Ill. App. Ct. 2002); *see also Beachem II*, 95-CR-00406, slip. op. at 18 (Ill. Cir. Ct. Jan. 14, 1999) (finding the claim "[a]dditionally to be substantively "without merit.").

As a result of the state courts' rulings, there is an adequate and independent state-law procedural bar against granting habeas relief. Petitioner did not comply with the demands of Illinois procedural law in terms of presenting her claim, and the Illinois courts rejected it on that basis. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *United States v. Gramley*, No. 95 C 5804, 1996 WL 82473, at *4 (N.D. Ill. Feb. 26, 1996) (collecting cases, including *Coleman*).

In addition, and independently, the claim is substantively meritless. Because Petitioner did not follow appropriate procedures for developing the factual record in the Illinois state courts, Petitioner is now, as explained below, barred from introducing any further evidence. 28 U.S.C. § 2254(e)(2). Petitioner did not submit with her post-conviction petition any affidavits

32

from her mother, aunt, or anybody else to substantiate her claims. *Beachem II*, 784 N.E.2d at 288. On appeal, Petitioner claimed that she had attached a sworn statement from her mother to the petition, which the trial court had failed to address. (D.E. 12, Ex. E at 14-15.) However, the appellate court said that the statement was dated nearly a month after the trial court judgment, and that it was addressed "To the Appellate Court"; it concluded that the statement had not been attached to the petition and that the trial court could not have had it. *Beachem II*, 784 N.E.2d at 288. The Court has obtained the record and verified both that the statement was dated by hand and stamped by a notary public on February 5, 1999, weeks after the trial court judgment was entered on January 14, and that it is in fact addressed "To the Appellate Court." (D.E. 15, Supp. Ex. 4 at C87.) The appellate court's conclusion concerning development of the factual record thus was correct and entirely reasonable.

Courts have interpreted 28 U.S.C. § 2254(e)(2)'s "failed to develop" language to allow expansion of the evidentiary record if it was left undeveloped through no fault or "lack of diligence" of the petitioner. *United States v. Williams*, 529 U.S. at 432; *accord, e.g., id.* at 435 ("Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."); *Davis v. Lambert*, — F.3d —, 2004 WL 2475102 at *6-7 (7th Cir. Nov. 4, 2004) (in Illinois, post-conviction petitioners must diligently seek to attach affidavits or other evidence to obtain a state evidentiary hearing).

In this case, however, the evidence establishes that Petitioner was at fault in failing to supply the requisite affidavit support required by Illinois law. Her aunt and mother had learned of the purported plea offer in August of 1996 (D.E. 15, Supp. Ex. 4 at C87) and had necessarily revealed the alleged failure to report the plea bargain to Petitioner before Petitioner sought post-

conviction relief. Petitioner does not contend that either of these relatives were unwilling or unable to supply Petitioner with an affidavit, and such a conclusion would not be reasonable. Not only did Petitioner's mother supply a (procedurally improper) affidavit shortly after the Illinois trial court rejected the post-conviction petition for lack of one, but Petitioner's mother had already testified as a defense witness at the penalty phase of Petitioner's trial. (*Id.* Supp Ex. 1 at J-87 to J-88.) Petitioner does not now offer any reason why the affidavit was not submitted to the trial court. In previous state court filings, she tried to excuse the lack of an affidavit by claiming that she was unable to discover her trial counsel's failure to convey the plea offer until after her post-conviction petition was dismissed. (D.E. 12, Ex. K at 6.) But this is obviously false: if Petitioner had not known about the alleged plea offer before that time, she could not have raised her claim in the post-conviction petition as she did.

Petitioner could still potentially seek an evidentiary hearing here—if her claim relied on a new retroactive rule of constitutional law or evidence that could not have previously been discovered through duly diligent investigation, or if she could present clear and convincing evidence that but for the error, no reasonable factfinder could have found her guilty. 28 U.S.C. § 2254(e)(2). None of these exceptions apply, and Petitioner does not argue that they do. Given the claim's procedural history, the Court may not allow Petitioner to expand the record in an evidentiary hearing, and unless a state court improperly stated or applied federal law—and the Illinois courts did not here—a federal court may grant habeas relief only if the state court judgment pursuant to which a petitioner is imprisoned relied on an unreasonable determination of the facts *in light of the evidence presented in the state court proceeding.* 28 U.S.C. § 2254(d)(2) (2000). And on the merits, this Court cannot conclude that the Illinois courts' dismissal of her petition was unreasonable. The only evidence Petitioner presented in the state

trial court (*i.e.*, at the procedurally appropriate time under state law) was rank hearsay. That is

no evidence at all. *See, e.g.*, *United States v. Godinez*, 110 F.3d 448, 456 (7th Cir. 1997) (citing

Fed. R. Evid. 802). There is no basis to provide federal habeas relief.

F.     Trial Counsel's Advice Against Petitioner Testifying or Refusal to Allow Petitioner to
       Testify

Petitioner alleges that "defendant wanted to testify at trial, but was advised not to by

counsel. If defend[a]nt would have been allowed to testify at trial, things would have come out a

whole lot different[ly] than [they] did." (D.E. 1 at 5.) Apparently, Petitioner would have

testified that Tianna Jackson approached her with what unbeknownst to Petitioner were Annie

Jones's car and belongings, which Jackson claimed were a borrowed car and a purse she had

found, and that Petitioner had only been involved in the attempt to use the credit card. (D.E. 15,

Supp. Ex. 4 at C38-C39.) It is unclear whether Petitioner is saying that her counsel simply

advised her not to testify, or that counsel actually forbade her to do so. Either occurrence

theoretically at least might have violated the Constitution—if the strategic advice was

egregiously poor enough, it could have violated the rule of *Strickland*, and forbidding Petitioner

to testify might have violated her constitutional right under the Fifth, Sixth, and Fourteenth

Amendments to testify truthfully, even if defense counsel believed that decision to be irrational

and likely to harm the defendant's interests. *United States v. Manjarrez*, 258 F.3d 618, 623 (7th

Cir. 2001) (citing *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987)).

However, Petitioner procedurally defaulted both claims in the state courts. Though she

raised what was either one or the other of these claims in her state petition for post-conviction

relief, she did not raise it in her appeal from that petition's dismissal. The claims did not go

through a full round of Illinois's established appellate process for post-conviction petitions, and

the Illinois courts would now consider them waived. The claims were thus improperly

exhausted, and this Court may not grant habeas relief. Again, the Petitioner asserts no excuse for

the procedural default and no excuse suggests itself to the Court.

Even if either of these possible claims were not procedurally defaulted, the Court would

find against Petitioner on the merits. Petitioner received constitutionally ineffective assistance

of counsel only if her attorney's advice not to testify fell beneath an objective standard of

reasonable attorney conduct. *Yarborough v. Gentry,* 540 U.S. 1, 5 (2003) (citing *Strickland,* 466

U.S. at 687); *accord Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004). An attorney's conduct

is presumed to be reasonable. *Martin*, 384 F.3d at 851. It is proper not to present testimony if

counsel reasonably determines that it would on balance harm rather than help the defendant's

case. *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). In this case, Petitioner's testimony

would have run headlong into her signed confession. It would have been foolish for Petitioner to

testify about her activity with Jackson unless she also testified about her interrogation in such a

way as to shake the jury's confidence in the confession. Petitioner's trial counsel had already

tried this approach in a hearing on a motion to suppress evidence. (*See* D.E. 15, Supp Ex. 1 at B-

86 (Petitioner testified that officers told her that suspects got "jacked up" for refusing to

confess); *id.* at B-87 (Petitioner testified that officers refused to stop questioning when asked to

provide an attorney); *id.* at B-99 (Petitioner testified that she never gave typed statement); *id.* at

B-101 (Petitioner testified that she did sign the typewritten pages presented, but that they "didn't

look like that" at the time).) The trial court found Petitioner's testimony "incredible" and

refused to suppress the confession. (*Id.* at C-28.) It was reasonable after the suppression hearing

for defense counsel to conclude that Petitioner would not impress the jury on the stand and to

recommend that Petitioner rely on the presumption of innocence and whatever doubt could be

thrown on the confession without her testimony.[1]

Furthermore, given Petitioner's conduct at trial, the Court cannot conclude that she was prevented from testifying against her will in violation of the Sixth and Fifth Amendments. Not only would Petitioner's "bare bones" assertion that she was prevented from testifying likely be insufficient to warrant an evidentiary hearing, *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), but the record further reveals that Petitioner gave "a direct, unequivocal answer to a trial court's colloquy," which "will suffice to find a knowing, intelligent waiver" of the right to testify, *Ward v. Sternes*, 334 F.3d 696, 707 (7th Cir. 2003) (citing *Lee v. Murphy*, 41 F.3d 311, 315 (7th Cir. 1994)); *accord Manjarrez*, 258 F.3d at 624. Petitioner twice stated in response to bench questioning that she did not want to testify, and further said that she understood that she alone could choose whether or not to testify. (D.E. 15, Supp. Ex. 1 at H-11.) Any suspicion that these answers were not genuine should be dispelled by Petitioner's conduct on a similar occasion. At sentencing she rejected her counsel's advice and exercised her right of allocution over counsel's express cautions. (*Id.* at J-188.) If this is any indication, Petitioner is not one to be cowed by an attorney in the courtroom. This claim is not a basis for habeas relief.

G.      Victim Impact Statements

Petitioner alleges that the trial court improperly heard three victim impact statements at sentencing, when only one should have been read. (D.E. 1 at 6.) Petitioner procedurally defaulted this claim in state court. She failed to raise it either on direct appeal or in her post-

---

[1] In this regard, it is a rule of thumb among many criminal defense lawyers that a jury that believes the defendant has lied to it is often likely to convict thereafter, regardless of whatever progress the defense has otherwise made; given that the trial court found Petitioner's testimony "incredible," one cannot reasonably second-guess an assessment that further airing of Petitioner's account would have been a poor tactical choice.

conviction petition, and thus improperly exhausted her remedies. Petitioner presently suggests no cause to excuse the procedural default. She did when she claimed in her post-conviction petition that her trial counsel had been constitutionally ineffective in failing to object to the victim impact statements; however, the state courts held that Petitioner had waived the ineffective assistance claim by failing to pursue it on direct appeal, meaning that the claim was itself procedurally defaulted because of an independent and adequate state-law ground for the judgment. *Beachem II*, No. 95-CR-00406, slip op. at 18. Even if this had not barred the excuse, Petitioner created an independent procedural default by failing to appeal from the trial court's dismissal of her claim, improperly exhausting her remedies.

The court may not grant relief. Even if it could, however, it would find no constitutional violation. The Court has found no Seventh Circuit cases supporting the Petitioner's claim that there is a rule limiting prosecutors to one "victim impact statement." On the contrary, the Supreme Court in *Payne v. Tennessee*, 501 U.S. 808 (1991), adopted a looser rule that victim impact evidence is admissible in the sentencing phase of capital murder trials as long as it does not render the trial "fundamentally unfair." *Id.* at 825 (citing *Darden*, 477 U.S. at 179-83).

In this case, there was nothing fundamentally unfair about the prosecution's presentation or use of the victim impact statements. The prosecution did not mention the statements at all in its nine page closing argument or its six page rebuttal, excepting perhaps one brief statement that "Annie Jones was a woman who lived in that community . . . who helped others . . . ." (*Id.* at J-157 to J-166, J-181 to J-187.) Furthermore, the court did not have to instruct a jury to avoid passion and sympathy: Petitioner waived a jury at the penalty phase of her trial, and the impact statements were heard by the court itself. (*Id.* at E-3 to E-11.) The court noted Petitioner's objections to the most powerful parts of the statements. (*Id.* at J-82, J-84.) In light of the trial

38

court's conduct and the statements' total absence from closing arguments, this Court could not reasonably conclude that the victim impact statements rendered the trial and sentencing constitutionally defective.

H.      Relative Sentences of Petitioner and Her Codefendant

Petitioner alleges that she and her codefendant, Tianna Jackson, received vastly different sentences for their participation in the same crime. While Petitioner is serving a ninety year prison term, Jackson "was given less time in . . . juvenile detention and is now home with her family." (D.E. 1 at 6.) Petitioner does not explain how this disparity violated federal law; the most likely theory is that Petitioner believes the different sentences violated the Equal Protection Clause of the Fourteenth Amendment. This claim was never raised in the state courts, either on direct appeal or in the post-conviction petition. Petitioner has therefore improperly exhausted her remedies, and the Court may not grant relief.

Petitioner offers the ineffective assistance of her appellate counsel as cause for improper exhaustion. However, as already mentioned, an ineffective assistance of counsel excuse can itself be procedurally defaulted by failing to properly present it to the state courts. Petitioner did not include the claim in her post-conviction petition, and it is defaulted.

Even if the claim had not been procedurally defaulted, it would not succeed. Constitutional sentencing law does not address the difference between the sentences of two persons convicted of the same particular crime, but rather the proportion between the sentence and the type of crime committed. *See, e.g.*, *Solem v. Helm*, 463 U.S. 277, 303 (1983) (finding that a sentence of life imprisonment without parole was disproportionate to uttering a no-account check). As previously noted, Petitioner cannot seriously contend that a ninety year sentence is disproportionate to murder, and does not appear to do so.

39

The Court's research has uncovered no case in which the Seventh Circuit or Supreme Court has given special constitutional scrutiny to the disparate sentences of two participants in a single crime. To the contrary, in *Holman v. Page*, 95 F.3d 481 (7th Cir. 1996), the Seventh Circuit held that "'[d]iscretion, even if it ends in grossly unequal treatment according to culpability, does not entitle a guilty defendant to avoid a sentence appropriate to his own crime.'" *Id.* at 486 (quoting *United States v. Marshall*, 908 F.2d 1312, 1321 (7th Cir. 1990)). The court in that case explicitly refused to create a more stringent law of sentence proportionality under the Equal Protection or Due Process Clauses. *Id.* at 485-86.

Other cases address the differences between codefendants' sentences, asking whether the sentencing court gave "thoughtful consideration" to the sentences. *See, e.g., United States v. Harty*, 930 F.2d 1257, 1269 (7th Cir. 1991) (citing *United States v. Nowicki*, 870 F.2d 405, 409 (7th Cir. 1989)). However, those are federal criminal cases reviewing sentences for abuse of discretion under federal law. *Id.* As previously mentioned, this Court cannot review Petitioner's sentence for abuse of discretion granted by state law, and even if it could, it would find none. In sum, the trial court found that Petitioner was the instigator of a senseless, cold-blooded murder of an elderly woman who died at the hands of her murderers after begging for their mercy. Giving a substantially higher sentence to the instigator of such a murder is not subject to reasonable second-guessing by this Court.

## CONCLUSION

For the aforementioned reasons, federal habeas relief is not warranted. No evidentiary hearing is necessary, and the Petition for a Writ of Habeas Corpus is dismissed. So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 11-19-04